Carroll
No. 2001-115

ROBERT MCINTIRE

v.

SUSAN H. LEE *& a.*

Argued: November 13, 2002
Opinion Issued: February 19, 2003

*McKean, Mattson & Latici, P.A.*, of Gilford (*Steven M. Latici* on the brief and orally), for the plaintiff.

*Nelson, Kinder, Mosseau & Saturley, P.C.*, of Manchester (*William C. Saturley & a.* on the brief, and *John C. Kissinger* orally), for the defendants.

DALIANIS, J. The defendants, Susan H. Lee and Fay E. Melendy, appeal from a jury verdict finding them liable for legal malpractice in their representation of the plaintiff, Robert McIntire. Specifically, they argue that the Superior Court (O'Neill, J.) erred by: 1) allowing the plaintiff's expert witness to render an opinion that was not disclosed prior to trial; 2) allowing the plaintiff to satisfy his burden of proving the trial within a trial through expert testimony; 3) admitting into evidence an affidavit prepared by one of the defendants in the underlying case; and 4) failing to find the defendants immune from malpractice under the doctrine of judgmental immunity. We affirm.

Based upon the record, the jury could have found the following facts. The plaintiff is the owner of a machine shop called Hillside Machine, which he started in 1973. In the spring of 1987, Catherine Woodall offered to serve as the plaintiff's sales representative. The plaintiff orally agreed to pay her a ten percent commission for any business she brought him. There was no discussion as to the length of the agreement or under what circumstances it could be terminated. The plaintiff understood at the time of the agreement that, as his representative, Woodall would, among other things, maintain regular contact with customers, deliver parts as needed and seek additional accounts from different companies.

Woodall brought the plaintiff business from a company called Varian Extrion. She told the plaintiff that she was servicing the Varian account and looking for additional accounts. The plaintiff paid Woodall a commission for approximately two years for business received from Varian. In the spring of 1989, however, the plaintiff, having not received any new accounts and being generally unsatisfied with Woodall's performance, threatened to terminate their contract.

Shortly thereafter, the plaintiff met with Attorney Fay Melendy to discuss his rights under the contract. Susan Lee was a law student who worked as a law clerk in Melendy's office. Lee was admitted to practice as an attorney in New Hampshire in November 1990. After reviewing Lee's research into the plaintiff's case, Melendy concluded that he could lawfully terminate his contract with Woodall. Subsequently, in May 1989, Lee sent a letter to Woodall advising her that she had been fairly compensated and that her agreement with the plaintiff was terminated.

In December 1989, Melendy filed a petition for declaratory judgment on behalf of the plaintiff. In response, Woodall filed a counterclaim arguing that the contract was enforceable and that she was entitled to commissions for as long as the plaintiff continued to do business with Varian. In her answer, Woodall agreed that she was acting as a sales representative for the plaintiff. Contrary to the plaintiff's understanding of the contract,

however, Woodall argued that she had no obligations except to introduce the plaintiff to Varian.

The defendants sent interrogatories to Woodall in March 1992 and June 1993. Based upon Woodall's answers to those interrogatories, Lee interviewed two machine shop owners in Massachusetts who had prior contractual relationships with Woodall similar to the plaintiff's contract. One of these businesses, Mair-Mac Machine, was involved in a similar contract dispute with Woodall. Lee contacted the attorney for Mair-Mac Machine to discuss the Massachusetts litigation, but did not request the underlying complaint or any discovery in the case. Woodall had answered a set of interrogatories in the Mair-Mac case dated June 30, 1993.

In the summer of 1993, the defendants filed a motion for summary judgment on behalf of the plaintiff, arguing that there was no factual dispute between the plaintiff and Woodall, and that the contract was not enforceable because there was no meeting of the minds and it violated the statute of frauds. The defendants also argued that the parties' relationship was an agency relationship terminable at will. The trial court denied the motion, but acknowledged that the factual issues were "extremely limited, if any remain at all," and scheduled a hearing for September 29, 1993, to address the legal issues.

On the day of the hearing, however, the court indicated that it wanted to hear testimony from the parties. Lee, who was representing the plaintiff at the hearing, was surprised by the court's request, but agreed to go forward with the hearing. She did not object to the lack of notice or move to continue the hearing. Following the hearing, Lee filed a post-trial memorandum with the court addressing the legal issues.

In its order, the trial court credited Woodall's version of the contract and ruled that the parties entered into a unilateral contract in which Woodall fully performed her obligations by bringing the plaintiff the Varian account. It found that under the terms of the contract, the plaintiff had to pay the defendant ten percent of all sales to Varian for the life of the account. The court also ruled that the contract was not within the statute of frauds.

Following an unsuccessful motion for reconsideration, the plaintiff filed a notice of appeal with this court, arguing that he was denied due process under both the State and Federal Constitutions because he did not have notice of the evidentiary hearing. He also argued that the trial court erred in finding the contract outside the statute of frauds. Attorney Ovide Lamontagne was retained to represent the plaintiff on appeal. In response to a show-cause order issued by the court regarding the due process claim, Attorney Lamontagne prepared an affidavit for defendant Lee (Lee affidavit), in which she states, in part, that:

> The Court's handwritten order denying Plaintiff's Motion for Summary Judgment indicated that no evidentiary hearing would be necessary but that a hearing on legal issues would be scheduled. . . . Understanding that no testimony would be offered at the September 29, 1993 hearing, I did not have available Plaintiff's witnesses, nor did I prepare Mr. McIntire for direct or cross examination.

We affirmed the trial court's ruling on the merits and held that the plaintiff failed to prove a due process violation because he did not show actual prejudice. *McIntire v. Woodall*, 140 N.H. 228, 230-32 (1995). Specifically, we noted that "[a]ny alleged prejudice could have been cured by a timely objection, acceptance of the trial court's offer [to present additional evidence], or a request for a continuance." *Id.* at 230.

In August 1996, the plaintiff sued the defendants for legal malpractice. In count I of his writ of summons, the plaintiff alleged that defendant Lee committed malpractice because she negligently failed to conduct adequate discovery, prepare the plaintiff for trial, preserve the plaintiff's rights to an evidentiary hearing or present relevant evidence on his behalf. In count II, he claimed that defendant Melendy was vicariously liable for Lee's negligence.

At trial, Attorney Lamontagne testified regarding his involvement in the plaintiff's appeal and commented on the defendants' representation of the plaintiff in the underlying case. He noted that Lee failed to preserve the plaintiff's due process claim during the evidentiary hearing. During Attorney Lamontagne's testimony, the plaintiff introduced the Lee affidavit, which was admitted over the defendants' objection that it was inadmissible as a subsequent remedial measure. *See* N.H. R. Ev. 407.

The plaintiff also introduced, as his standard of care expert, Attorney Daniel Laufer. Attorney Laufer opined, among other things, that the defendants did not conduct adequate research or discovery, and that the decision to go forward with the evidentiary hearing on September 29, 1993, without preserving an objection, was negligent and contributed to the plaintiff losing his case. He also stated that Melendy did not properly supervise Lee, and that due to this lack of supervision, some of Lee's actions while still a law student constituted the unauthorized practice of law under Supreme Court Rule 35. The defendants objected to Attorney Laufer rendering this latter opinion on the grounds that it was not contained in the plaintiff's expert disclosure or in Attorney Laufer's deposition, but the trial court overruled the objection.

The plaintiff also introduced evidence that he claimed should have been introduced in the underlying case, which included the testimony of Edward

McDonald, the owner of Mair-Mac Machine, and Woodall's answers to interrogatories in the Mair-Mac case. McDonald, who also had an account with Varian, testified that Woodall previously served as his sales representative and that she was obligated to service his account with Varian by, among other things, visiting the company on a regular basis, delivering parts and serving as a mediator between the companies. He also stated that Woodall was responsible for performing similar duties when she was a sales representative for his former employer, Russard Incorporated. In her answers to interrogatories in the Mair-Mac case, Woodall stated that her agreement with McDonald was that she was to serve as his sales representative and receive a ten percent commission on all work McDonald completed for the companies from which she brought orders. In addition, she stated that she performed duties for McDonald including visiting Varian at least weekly and serving as a mediator between Mair-Mac and Varian if problems arose.

At the close of the plaintiff's case, the defendants moved for a directed verdict, arguing that there was insufficient evidence to support a finding of malpractice. They also argued that they were immune from liability under the doctrine of judgmental immunity because their alleged errors involved strategic or tactical decisions. The trial court denied the motion and the jury returned a verdict for the plaintiff. This appeal followed.

I

We begin by addressing the defendants' argument that the trial court erred by permitting the plaintiff to satisfy his burden of proving the trial within a trial with expert testimony.

In a legal malpractice case, a plaintiff must prove: (1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach. *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491, 495-96 (1999). "A plaintiff who alleges that an attorney's negligence caused the loss of a legal action or a legal defense can succeed only by proving that the action or defense would have been successful but for the attorney's misconduct." *Fairhaven Textile v. Sheehan, Phinney, et al.*, 695 F. Supp. 71, 75 (D.N.H. 1988). The jury will therefore substitute itself as the trier of fact and determine the factual issues presented on the same evidence that should have been presented to the original trier of fact. *Witte v. Desmarais*, 136 N.H. 178, 189 (1992). This phase of the malpractice case is known as the "trial within a trial."

*Id.*; 5 R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 33.8, at 69 (5th ed. 2000).

The defendants contend that the plaintiff, rather than introducing actual evidence that should have been presented in the underlying case, relied upon expert testimony to explain what evidence should have been introduced. We disagree.

As is evident from the record, the plaintiff did not simply rely upon expert testimony to prove his case. In addition to introducing the underlying trial transcript, the plaintiff introduced evidence he claimed should have been introduced at the underlying trial. Specifically, he introduced the testimony of Edward McDonald, who had a contractual relationship with Woodall similar to the plaintiff's contract and who testified that Woodall, as a sales representative, had various obligations under his contract. He also stated she had performed similar duties when she served as a sales representative for Russard, Incorporated.

The plaintiff also introduced Woodall's answers to interrogatories from the Mair-Mac case. Her answers revealed not only that her contract with McDonald was similar to her contract with the plaintiff, but also that she performed various services for McDonald as his sales representative similar to those that the plaintiff claims were elements of his contract. As the trial court explained when denying the defendants' post-trial motions, a jury could reasonably find that such answers undermined her testimony that she had no performance obligations under her contract with the plaintiff.

While Attorneys Lamontagne and Laufer offered their opinions on the potential impact additional evidence would have had on the underlying trial, their testimony was not used in lieu of presenting the actual evidence to the jury. Further, we disagree with the defendants that McDonald's testimony and Woodall's answers to interrogatories did not provide any basis for the jury to conclude that the underlying case should have been decided differently. Thus, we find no error in the plaintiff's presentation of his case.

## II

The defendants next argue that Attorney Laufer should not have been permitted to testify that Lee engaged in the unauthorized practice of law. They assert that the trial court should have prohibited the admission of this testimony because this particular opinion was not disclosed prior to trial in either the plaintiff's expert disclosure statement or Laufer's deposition. Consequently, they argue that the verdict should be reversed

because the testimony was so inflammatory that it may have affected the verdict.

Assuming without deciding that the trial court erred in allowing Laufer to testify that Lee engaged in the unauthorized practice of law, we find this error to be harmless. An error is considered harmless if it is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party asserting it. *Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 536 (1986). Thus,

> [w]here it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment will not be disturbed. But where the case is a close one on the facts, and the jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for reversal.

*Id.* at 537-38 (quotations and ellipsis omitted).

The plaintiff introduced the opinion that Lee engaged in the unauthorized practice of law for the limited purpose of establishing that Melendy did not properly supervise Lee during the representation of the plaintiff. Even without this testimony, however, there was significant evidence that could lead a reasonable jury to find that Melendy did not properly supervise Lee when she was either a law student or a new associate. This evidence included, but was not limited to, a lack of billing records from Melendy's office showing time she spent working with Lee on the plaintiff's case, a memorandum from Lee to Melendy explaining a prior correspondence Lee sent to Woodall's counsel regarding the underlying case, and delays in conducting discovery and in the overall prosecution of the plaintiff's case. Nor do we conclude, given the evidence introduced regarding Lee's alleged negligent representation of the plaintiff, that Laufer's opinion affected the jury's decision as to that claim.

 Thus, while the accusation that Lee engaged in the unauthorized practice of law may be inflammatory, this case is not so close on the facts that the trial court's admission of the testimony constitutes a substantial error which calls for reversal. Having considered the record in this case, we disagree that the introduction of this evidence affected the outcome below, and hold that any error in admitting it was harmless.

## III

The defendants next argue that the trial court erred in admitting the Lee affidavit at trial because it constituted a subsequent remedial measure under New Hampshire Rule of Evidence 407.

We will not reverse a trial court's ruling on the admissibility of evidence absent an unsustainable exercise of discretion. *In re Antonio W.*, 147 N.H. 408, 414 (2002). To show an unsustainable exercise of discretion, the defendants must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of their case. *See State v. Lambert*, 147 N.H. 295, 296 (2001).

New Hampshire Rule of Evidence 407 provides: "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." The controlling justification for excluding evidence of subsequent remedial measures is a public policy concern that people may not repair their property after an accident if such measures could be used against them in a lawsuit. *Cyr v. J.I. Case Co.*, 139 N.H. 193, 203-04 (1994). The defendants argue that this rationale supports excluding the Lee affidavit under Rule 407. We disagree. Unlike a property owner remedying a hazardous condition that had resulted in an injury, the filing of the Lee affidavit and the statements made therein do not constitute corrective measures that, if taken previously, would have made the event (the choice to go forward with the evidentiary hearing without objecting or moving to continue) less likely to occur. *Cf.* N.H. R. Ev. 407. Thus, we do not find that this evidence falls within the purview of Rule 407 and is, therefore, not a subsequent remedial measure.

Accordingly, we hold that the trial court did not commit an unsustainable exercise of discretion by allowing the plaintiff to introduce the Lee affidavit at trial.

IV

Finally, the defendants argue that they are immune from liability pursuant to the doctrine of judgmental immunity because the alleged errors in the underlying case constituted strategic or tactical decisions that were within their discretion.

An attorney owes his or her client a duty to exercise reasonable skill and care in representing the client. *See North Bay Council, Inc. v. Bruckner*, 131 N.H. 538, 543 (1989). "Whether the attorney has breached the applicable standard of care in representing the client is a question of fact to be determined through expert testimony and usually cannot be decided as a matter of law." *Cook v. Continental Cas. Co.*, 509 N.W.2d 100, 103 (Wis. Ct. App. 1993) (quotation omitted). The judgmental immunity doctrine provides, however, that an attorney will generally be immune from liability, as a matter of law, for acts or omissions during the conduct

of litigation, which are the result of an honest exercise of professional judgment. *See Woodruff v. Tomlin*, 616 F.2d 924, 930 (6th Cir. 1980); *Sun Valley v. Rosholt, Robertson & Tucker*, 981 P.2d 236, 239-40 (Idaho 1999); MALLEN, *supra* § 30.8, at 428-31. While we have not formally adopted the judgmental immunity doctrine, we provide the same protection in professional liability cases. *See Morrill v. Tilney*, 128 N.H. 773, 779 (1986) (stating that a professional is not liable for errors in judgment).

As one court has noted, "[r]ather than being a rule which grants some type of immunity to attorneys, [the judgmental immunity doctrine] appears to be nothing more than a recognition that if an attorney's actions could under no circumstances be held to be negligent, then a court may rule as a matter of law that there is no liability." *Sun Valley*, 981 P.2d at 240 (quotation omitted). As with any negligence case, however, it is axiomatic that if there is a genuine issue of material fact about the reasonableness and care exercised by an attorney, then the issue must be submitted to the jury. *Id.*; *see also Morrill*, 128 N.H. at 780 (rejecting defendant's argument that he was immune from medical malpractice liability since a reasonable jury could find that his conduct fell below the requisite standard of care).

There was evidence introduced here that could lead a reasonable jury to conclude that the defendants failed to exercise a reasonable degree of skill and care in representing the plaintiff. The plaintiff's expert witness, Attorney Laufer, testified extensively to this effect, pointing out numerous deficiencies in the defendants' representation of the plaintiff. "While his testimony was not uncontroverted, the jury was free to accept or reject the testimony of all the witnesses, in whole or in part." *Morrill*, 128 N.H. at 780. Thus, we cannot hold that the defendants' actions in representing the plaintiff did not breach the standard of care as a matter of law. The trial court, therefore, did not err in denying the defendants' claim that they were immune from malpractice liability.

*Affirmed.*

NADEAU, J., concurred; BARRY, J., superior court justice, specially assigned under RSA 490:3, concurred.