Nashua District Court
No. 2004-747

## AIMCO PROPERTIES, LLC d/b/a ROYAL CREST ESTATES

### v.

### KASHA DZIEWISZ

Argued: June 22, 2005
Opinion Issued: September 7, 2005

*Gormley & Gormley, P.C.*, of Nashua (*Arthur O. Gormley, III* on the brief and orally), for the plaintiff.

*Kasha Dziewisz*, by brief, *pro se.*

*New Hampshire Legal Assistance*, of Manchester (*Elliott Berry* on the brief and orally), for The Way Home, as *amicus curiae*.

DALIANIS, J. The defendant, Kasha Dziewisz, appeals an order of the Nashua District Court (*Ryan*, J.) granting the plaintiff, AIMCO Properties, LLC d/b/a Royal Crest Estates, possession of her apartment. We reverse.

The limited record reflects the following facts. The parties entered into a lease beginning on September 1, 2003, and ending on August 31, 2004. On July 12, 2004, the plaintiff sent the defendant a letter stating, in pertinent part:

> Dear Ms. Dziewisz,
>
> Please be advised your current apartment lease expires on August 31, 2004.
>
> You are hereby notified that Royal Crest Estates—Nashua does not intend to renew you [*sic*] lease. Therefore, you must vacate your apartment by Tuesday August 31, 2004.

After the defendant failed to vacate the apartment, the plaintiff filed suit seeking a writ of possession. The defendant filed three motions to dismiss, arguing that: (1) the plaintiff's letter concerning non-renewal of the lease did not constitute a notice to quit; (2) even assuming the letter constituted a notice to quit, the plaintiff failed to allege good cause for the eviction in the notice to quit; and (3) the plaintiff failed to serve her personally or at her abode. On October 7, 2004, the district court denied these motions and granted the plaintiff's request for a writ of possession.

The defendant appeals, arguing that the district court erred by denying her motions to dismiss. Because we agree with respect to her second motion to dismiss, we need not address her first and third motions to dismiss.

The defendant argues that the plaintiff's "failure to state one of the statutory reasons for eviction or state good cause in the Letter of Non-Renewal" does not comply with the requirement of RSA 540:2, II (1997) that a landlord of restricted property have good cause for an eviction. RSA 540:3, III (1997) requires that the notice to quit state the reason for eviction. She contends that the expiration of the lease, in and of itself, does not constitute good cause.

We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Bedford Chapter-Citizens for a Sound Economy v. Sch. Admin. Unit #25*, 151 N.H. 612, 614 (2004). We first examine the language of the statute, and, where possible, we

ascribe the plain and ordinary meaning to the words used. *Id.* When the language of a statute is unambiguous, we need not look beyond it for further indication of legislative intent. *Id.*

RSA 540:2, II provides:

> The lessor or owner of restricted property may terminate any tenancy by giving to the tenant or occupant a notice in writing to quit the premises in accordance with RSA 540:3 and 5, but only for one of the following reasons:
>
> (a) Neglect or refusal to pay rent due and in arrears, upon demand.
>
> (b) Substantial damage to the premises by the tenant, members of his household, or guests.
>
> (c) Failure of the tenant to comply with a material term of the lease.
>
> (d) Behavior of the tenant or members of his family which adversely affects the health or safety of the other tenants or the landlord or his representatives, or failure of the tenant to accept suitable temporary relocation due to lead-based paint hazard abatement, as set forth in RSA 130-A:8-a, I.
>
> (e) Other good cause.
>
> (f) The dwelling unit contains a lead exposure-hazard which the owner will abate by:
>
> (1) Methods other than interim controls or encapsulation;
>
> (2) Any other method which can reasonably be expected to take more than 30 days to perform; or
>
> (3) Removing the dwelling unit from the residential rental market.

RSA 540:2, II states that it applies to "any tenancy." The plain meaning of any is "every" or "all." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (2d unabridged ed. 2002). Prior to the expiration of the lease, the defendant had a leasehold tenancy. On August 31, 2004, the defendant's lease expired; when the lease expired and the defendant did not vacate the apartment, she became a tenant at sufferance. *See Hill v. Dobrowolski,* 125 N.H. 572, 575 (1984) ("A tenant who, without any agreement, holds over after his term has expired is a tenant at sufferance."). Thus, at all times relevant to these proceedings, the plaintiff and defendant had a landlord-tenant relationship. Regardless of whether the defendant had the status of a leasehold tenant or the status of a tenant at sufferance, the plaintiff needed good cause to terminate the defendant's tenancy.

RSA 540:3, III requires that the "notice to quit shall state with specificity the reason for the eviction." Assuming, without deciding, that the plaintiff's letter of non-renewal constituted a notice to quit, the only reason that the plaintiff provided in its letter of non-renewal was the expiration of the lease. Thus, we must determine whether the expiration of a lease, alone, constitutes good cause for an eviction as required by RSA 540:2, II.

RSA 540:2, II does not provide that the expiration of a lease constitutes good cause. It does, however, contain a section describing "other good cause." RSA 540:2, II(e). The question we must answer is whether the expiration of a lease constitutes "other good cause."

RSA 540:2, V provides that other good cause "includes, but is not limited to, any legitimate business or economic reasons and need not be based on the action or inaction of the tenant, members of his family, or guests." Whether the expiration of a lease constitutes "other good cause" cannot be determined by merely looking to the plain language of RSA 540:2, II. The term "other good cause" is ambiguous. When a statute is ambiguous we consider legislative history to aid our analysis. *State v. Whittey*, 149 N.H. 463, 467 (2003). Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.*

■ RSA 540:2, II was adopted in 1985 as part of House Bill 95, which was enacted to "limit[] the grounds for eviction of tenants from restricted property." *House Bill* 95 (1985) (analysis). It was described as "giv[ing] . . . greater flexibility to landlords to evict tenants for any good reason and at the same time protect[ing] tenants from arbitrarily and/or ill motivated evictions." N.H.S. JOUR. 157 (1985). Interpreting the term "other good cause" as including the mere expiration of a lease would run contrary to this legislative intent, as it would allow landlords to arbitrarily evict tenants whose leases have expired, thereby denying tenants the precise protection that RSA 540:2, II was designed to provide.

Nor would it advance the purpose of the statute to conclude that the mere expiration of a lease constitutes a legitimate business or economic reason. RSA 540:2, II only applies to landlords who rent restricted property: landlords who are generally in the business of renting residential property, and whose main concern is, presumably, profit. *See* RSA 540:1-a, II (1997). It does not apply to: property rented for nonresidential purposes, *see* RSA 540:1-a, I (1997); single-family houses if the owner of such a house does not own more than three single-family houses at one time, *see* RSA 540:1-a, I(a) (1997); rental units in an owner-occupied building containing a total of four units or fewer, *see* RSA 540:1-a,

I(b) (1997); rental units in a vacation or recreational dwelling rented during the off-season for certain purposes, *see* RSA 540:1-a, I(c) (1997); or single-family houses acquired by banks or other mortgagees through foreclosure, *see* RSA 540:1-a, I(d) (1997). Replacing one tenant upon the expiration of a lease with another tenant who will pay the same rent and occupy the same position as the tenant being evicted does not, in and of itself, provide the landlord of restricted property with any economic or business advantage.

During the senate debates in 1985, it was stated by the sponsor of the bill that:

> Under current law if a tenant does not have a lease, as in the case with most low and moderate income tenants, he or she can be evicted without any reason whatsoever. All the landlord has to do is give the tenant a notice directing the tenant to leave in 30 days. Under HB 95, almost all landlords will be required to establish justifiable cause for eviction.

N.H.S. JOUR. 1040 (1985). Were we to hold that a landlord may evict a tenant for good cause merely because a lease has expired we would eviscerate the protections that RSA 540:2, II was designed to afford; a landlord could easily avoid the requirements of RSA 540:2, II, by simply requiring tenants to sign renewable month-long leases, allowing the landlord to evict any tenant arbitrarily upon the expiration of any month's lease. A landlord would thus be able to evict tenants in the *exact* manner that RSA 540:2, II was designed to prohibit.

Were the mere expiration of a lease to constitute good cause, then tenants could be evicted arbitrarily from their homes through no fault of their own; such evictions, as the legislature undoubtedly realized, create substantial hardships for tenants. At worst, tenants may become homeless as a result. Even when another residence is procured, the tenant must bear the expenses and inconveniences of moving. Relationships with friends and neighbors may be disrupted, children may be forced into new school districts, and local services and support systems for elderly and disabled tenants may be lost. Such a result would be contrary to what the legislature intended.

Furthermore, were the mere expiration of the lease to constitute good cause for eviction, it could enable landlords to evict when the true reason for eviction is ill-motivated. RSA 540:2, II was enacted to prevent landlords from evicting tenants for ill-motivated reasons. If the mere expiration of the lease were to constitute good cause, a landlord who did not wish to continue renting to a tenant for any reason—for example, because the tenant became disabled during the course of the tenancy—

could evict the tenant at the end of the lease without disclosing the true reason for eviction. This would be contrary to what the legislature intended.

Our holding does not restrict a landlord's ability to lease or rent to whomever the landlord chooses, within the limits imposed by other laws. The legislature only sought to establish *limited* protections for tenants who had *already* established a tenancy, as demonstrated by this exchange on the senate floor during the debate on whether to adopt the changes to RSA chapter 540:

> SENATOR STEPHEN: Isn't [sic] the owner or realtor, in the past, always had his choice of who to rent to. Would he still have that?

> SENATOR BOYER: Yes, he would have that. That is when the decision ought to be made whether they [sic] want a tenant or not.

> SENATOR STEPHEN: Does that give the tenant the right to stay on the premise [sic] forever?

> SENATOR BOYER: No.

N.H.S. JOUR. 1042-43 (1985). The time for a landlord to determine whether to rent to a tenant is not after the tenant has established a residence, but at the beginning of the landlord-tenant relationship. A landlord, of course, is not forced into a perpetual landlord-tenant relationship, and may terminate the tenancy for good cause as laid out in RSA 540:2, II.

■ The plaintiff set forth no good cause in its "notice to quit" for its desire to evict the defendant; we must, therefore, reverse the district court's denial of the second motion to dismiss.

Finally, we note that the plaintiff argues that this issue is not preserved for our review because, while the defendant's motion to dismiss addressed the issue, her notice of appeal did not. To the contrary, the defendant's second question in her notice of appeal is precisely that which we address today: "Whether the landlord's failure to state good cause should have been grounds for dismissal." Accordingly, the issue was properly preserved for our review.

*Reversed.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred; NADEAU, J., concurred specially.

NADEAU, J., concurring specially. I concur in the judgment reversing the trial court's decision because the landlord, AIMCO Properties, L.L.C. d/b/a Royal Crest Estates, *concedes* that the trial court *erred* when it ruled that the landlord did not have to serve a notice to quit upon the tenant, Kasha Dziewisz. The landlord argues that this error was harmless and, therefore, has the burden of proof on that issue. *See Hodgdon v. Frisbie Mem. Hosp.*, 147 N.H. 286, 292 (2001). Our review is limited by the record provided by the appellant unless supplemented by the appellee. "An error is considered harmless if it is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party asserting it." *McIntire v. Lee*, 149 N.H. 160, 167 (2003). Thus, in a civil case, we will not disturb the trial court's judgment "where it appears that an error did not affect the outcome below, or where [we] can see from the entire record that no injury has been done." *Id.* (quotation and brackets omitted). Because we have no transcript, we have no way of making this determination. Accordingly, I believe we have no choice but to reverse the trial court.

In light of the landlord's concession, I would not reach the issue of whether, consistent with RSA 540:2, II (1997), the trial court could have awarded the landlord possession of the premises based upon its notice of intent not to renew the lease. Additionally, unlike the majority, I would hold that, in this case, the landlord's notice met the requirements of RSA 540:2, II. Therefore, I concur only in the judgment

RSA 540:2, II provides, in pertinent part, that the "lessor or owner of restricted property may terminate any tenancy by giving to the tenant . . . a notice in writing to quit the premises in accordance with RSA 540:3 and 5, but only for one of the following reasons." One of the reasons provided is "[o]ther good cause." RSA 540:2, II(e). Other good cause "includes, but is not limited to, any legitimate business or economic reason." RSA 540:2, V (1997).

The majority asserts that the mere expiration of the lease is not good cause. I disagree. I believe that the statutory language defining "[o]ther good cause" is broad enough to include terminating a tenancy at the expiration of the term of a written lease. The expiration of the term of a written lease, in my view, may, under appropriate circumstances, constitute a "legitimate business or economic reason" for terminating a tenancy. As we have no transcript of the trial court proceedings, I believe the majority is mistaken when it assumes that the landlord here could not prove *any* set of circumstances under which the expiration of the tenant's lease could be a "legitimate business or economic reason" for terminating her tenancy.

The majority contends that, under its interpretation of RSA 540:2, II, a landlord "is not forced into a perpetual landlord-tenant relationship." To the contrary, under the majority's interpretation, a landlord with a lease of a specified term is obliged to continue the tenancy absent some other "good cause." *See Franklin Tower One, L.L.C. v. N.M.*, 725 A.2d 1104, 1110 (N.J. 1999). Under the majority's interpretation, lease provisions purporting to limit the lease to a specified duration have no meaning. The effect of the majority's interpretation "is to create a perpetual tenancy, virtually a life interest, in favor of a tenant of [restricted property] covered by [the statute]." *J.M.J. Properties v. Khuzam*, 839 A.2d 102, 106 (N.J. Super. Ct. App. Div. 2004) (quotations omitted). I do not believe that was the intent of RSA 540:2.

Although the *amicus curiae* relies upon precedent developed in the context of federally subsidized housing, I believe that its reliance is misplaced. We are not bound by cases interpreting the good cause requirements imposed upon owners of federally subsidized rental housing when interpreting RSA 540:2. Moreover, although the tenant argues that she receives assistance from the federal Section 8 housing program, she has failed to demonstrate that she preserved this claim for review on appeal. Thus, we treat this claim as waived on appeal. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004).

For all of these reasons, respectfully, I concur only in the judgment.