NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Board of Barbering, Cosmetology, and Esthetics
No. 2016-0365


APPEAL OF DAO NGUYEN
(New Hampshire Board of Barbering, Cosmetology, and Esthetics)

Submitted: April 19, 2017
Opinion Issued: August 1, 2017


Hastings Malia P.A., of Fryeburg, Maine (Andrew P. Pierce on the brief), for the petitioner.


Joseph A. Foster, attorney general (Thomas Broderick, attorney, on the brief), for the respondent.


LYNN, J. The petitioner, Dao Nguyen, appeals a decision of the respondent, the New Hampshire Board of Barbering, Cosmetology, and Esthetics (Board), suspending her personal license as a manicurist and revoking the shop license for Nail Care. We affirm.

I

The pertinent facts are as follows. The petitioner was issued a personal license by the Board in 1998. She also held a shop license issued by the Board for her business, Nail Care. In April 2013, Board inspector Beulah Green conducted a routine inspection of Nail Care. See RSA 313-A:21 (2015). Green found numerous violations of the New Hampshire Board of Barbering,

Cosmetology, and Esthetics Administrative Rules (Rules), including two foot spas that were not disinfected properly, no record of cleaning for two foot spas, five tables that were not sanitized, numerous implements that were either not sanitized and disinfected properly or not discarded or disposed of properly, multiple "credo" blades,[1] and the use of nail drills that are not manufactured for use on the natural nail (improper nail drills).  For these violations, Green imposed a fine of $4,158.

In June 2014, Green conducted a second inspection, and discovered multiple, repeat violations of the Rules, including implements that were either not sanitized or disinfected properly or not discarded or disposed of properly, and the use of improper nail drills.  Green also found additional violations of the Rules, including 27 bottles of Methyl Methacrylate monomer (MMA), which is a substance banned for use on a person, one credo blade, and one employee who was working without a New Hampshire license.  Furthermore, during the inspection, the petitioner refused to let Green go into a back room, and began "yelling and screaming" at her.  As a result, Green could not complete the inspection; she imposed a fine of $14,731 for the violations.

In March 2015, Green conducted a third inspection of Nail Care, and yet again found multiple violations of the Rules, including no records of cleaning for nine foot spas, implements that were either not sanitized or disinfected properly, and multiple credo blades.  Green imposed a fine of $1,693.

In October 2015, a customer of Nail Care contacted the Board to report multiple violations of the Rules that he noticed while receiving services earlier in the month.  He reported that "none of [the] tools [were] sterilized," and that his blood got "all over" several tools, which were then placed back in a drawer without being cleaned or disinfected.

In response to this complaint, Green conducted a fourth inspection in late October and found numerous violations, including six foot spas that were not disinfected properly, implements that were either not disinfected properly or not discarded properly, and one unlicensed worker.  The unlicensed worker, who was performing a pedicure on a client, walked away from Green when she asked him for a license or identification.  Green also reported that she witnessed the petitioner accept a client for a pedicure and seat the client in an uncleaned foot spa.  When asked to sign the inspection report, the petitioner refused.  Green imposed a fine of $1,558 for these violations.

---

[1] Credo blades are "short handled devices similar to household razors" that are used "to remove calluses during pedicures or other foot and skin treatments."  Missouri Division of Professional Regulation, Board of Cosmetology and Barber Examiners, State Regulators Warn Against Credo Blades During Pedicures, http://pr.mo.gov/cosbar-pressrelease.asp (last visited July 18, 2017). Many state licensing boards, including New Hampshire, have banned the use of these blades in salons.  Id.; see also N.H. Admin. R., Bar 302.07(g)(4).

2

In November, the Board issued a notice of hearing, stating that it was commencing a public disciplinary proceeding to determine whether the petitioner had committed misconduct under RSA 313-A:22 (2015) by failing "to observe the requirements of any rule adopted by the [B]oard." RSA 313-A:22, II(i). However, the Board did not attach either the customer's complaint or Green's investigatory report to the notice of hearing, as required by Rule 206.02. See N.H. Admin. R., Bar 206.02. The hearing was held on December 7, at which both Green and the petitioner testified. The petitioner testified that the credo blades belonged to a previous owner, and that she had never used them. She admitted to keeping the credo knives and blades when Nail Care moved to a different location because she was unsure of how to dispose of them safely, and was reluctant to put the credo blades in the trash. She also stated that the nail drills were not used at Nail Care, and that she refused to sign the inspection form only because she did not read English well. Finally, the petitioner testified that all of her employees were licensed and that the individual who had walked away from Green was her boyfriend. According to the petitioner, her boyfriend was merely chatting with the client, rather than working, and had walked away from Green because he did not speak English.

The Board found Green to be credible and the inspection reports to be accurate, detailed, and professional. The Board found the petitioner's testimony to be "less reliable," and ruled that the petitioner repeatedly violated multiple subsections of RSA 313-A:22 as well as Rules 501.02(e) and (h). See RSA 313-A:22; N.H. Admin. R., Bar 501.02. Noting the repeated violations and the "blatant disregard" that the petitioner demonstrated towards the Rules, the Board suspended the petitioner's personal license for five years, revoked her shop license for Nail Care, and ordered her to pay all outstanding fines owed to the Board within 90 days. The Board also ruled that, if the petitioner's license is reinstated, it will be subject to a three-year probationary period.

The petitioner moved to stay and reconsider the Board's order. The Board denied the motion for stay but agreed to reconsider the prior order. In May 2016, the Board reconsidered and voted to vacate part of its order. Specifically, the Board found that the three-year probationary period it had originally imposed violated the statutory maximum discipline allowed, and therefore vacated it. See RSA 313-A:22, III(b). This appeal followed.

II

On appeal, the petitioner argues that the Board erred as a matter of law and violated her procedural due process rights by: (1) suspending her personal license; (2) finding that she violated Rule 302.07(g)(4) by merely possessing credo blades and nail drills, rather than by using them; (3) levying arbitrary fines against her; (4) failing to attach the customer's complaint to the notice of hearing; (5) failing to provide Green's investigatory report prior to the hearing;

and (6) ruling that she violated certain statutory requirements that were not included in the notice of hearing. We address these arguments in turn.

RSA chapter 541 governs our review of the Board's decisions. See RSA 313-A:22, IV. RSA 541:13 (2007) states, in relevant part:

> [T]he burden of proof shall be upon the party seeking to set aside any order or decision of the [Board] to show that the same is clearly unreasonable or unlawful, and all findings of the [Board] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

Accordingly, we review the Board's factual findings deferentially, and we review the Board's rulings of law de novo. See RSA 541:13.

A

The petitioner first argues that the Board's decision to suspend her personal license in addition to her shop license was in error because it "conflate[d] the violations of Nail Care under its shop license" with the duties arising from her personal license. The petitioner argues that there were no findings that she violated any of the obligations imposed on her as an individual manicurist, or that the violations of Nail Care were her responsibility. Rather, the petitioner asserts that the other manicurists at Nail Care were responsible for most of the violations. The petitioner asserts that this conflation also violated her due process rights under the State Constitution.

The petitioner's due process arguments require us to engage in a procedural due process analysis. Because the petitioner claims only that her due process rights under the State Constitution have been violated, we address her arguments solely under that constitution, using federal authority only to aid in our analysis. State v. Nickles, 144 N.H. 673, 676 (2000). "Because this issue poses a question of constitutional law, we review it de novo." Appeal of Mullen, 169 N.H. 392, 397 (2016) (quotation omitted).

Part I, Article 15 of the State Constitution provides, in relevant part: "No subject shall be . . . deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land . . . . " N.H. CONST. pt. I, art. 15. "Law of the land in this article means due process of law." Mullen, 169 N.H. at 397 (quotation omitted). "We engage in a two-part analysis in addressing procedural due process claims: first, we determine whether the

individual has an interest that entitles him or her to due process protection; and second, if such an interest exists, we determine what process is due." Id. (quotation omitted). "At its most basic level, the requirement to afford due process forbids the government from denying or thwarting claims of statutory entitlement by a procedure that is fundamentally unfair." Id. "Fundamental fairness requires that government conduct conform to the community's sense of justice, decency and fair play." Id. (quotation omitted).

This court has held that the revocation of a license necessary for one's occupation is a legally protected property right that may not be denied without affording due process. Appeal of Plantier, 126 N.H. 500, 506 (1985). Thus, we turn to the second part of our analysis, namely, the determination of what level of process is due. In doing so, we balance three factors: "(1) the private interest that is affected; (2) the risk of erroneous deprivation of that interest through the procedure used and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens brought about by additional procedural requirements." Mullen, 169 N.H. at 397. "The requirements of due process are flexible and call for such procedural protections as the particular situation demands." Id. (quotation omitted).

Although the petitioner's private property interest in retaining her personal license is undoubtedly substantial, so is the government's interest in protecting the health and safety of customers of nail salons, and there were ample procedural safeguards to minimize the risk of erroneous deprivation. Before the Board's hearing, four inspections were conducted by Green, all of which found identical, repeated violations of RSA 313-A:22 and Rule 501.02(h). Although the petitioner was presented with each inspection form, she failed to correct these violations over a span of roughly forty months. Moreover, she was given a notice of hearing that included copies of each inspection form and listed both her shop license and her personal license, and a hearing at which she was given the opportunity to present her own evidence and to dispute the Board's evidence. At the outset of this hearing, the Board identified her by her personal license number and also by her shop license number.

Moreover, the Board did not err in suspending the petitioner's personal license. For one thing, there were multiple instances where the petitioner was directly responsible for violations of RSA 313-A:22 or Rule 501.02(h): Green testified that the petitioner told one customer to sit in a chair that she had previously conceded was dirty. The petitioner also told Green that she would not clean the foot spas or other equipment in front of customers. During another inspection, the petitioner "screamed and yelled" at Green, and refused to sign the inspection form. Furthermore, given the pervasiveness of unclean tools and implements in Nail Care, as well as the fact that the petitioner worked as a manicurist at Nail Care, it is reasonable to infer that the petitioner used those tools at least occasionally. Finally, the Board found that the

5

petitioner aided and abetted the practice of employees who were not duly licensed by hiring them and allowing them to service customers over a multi-year period.

B

The petitioner next argues that it was an error of law and a violation of her due process rights to find that she had violated Rule 302.07(g)(4) because she was only observed <u>possessing</u> blades at Nail Care, rather than using them on customers.

Rule 302.07(g) states, in relevant part, that "[a] licensee shall not . . . [u]se a blade to remove any corns, callouses, or skin." <u>N.H. Admin. R.</u>, Bar 302.07(g). The Board found that the petitioner had violated the rule by having credo blades available; the petitioner seizes upon this language to argue that she was found to have violated Rule 302.07(g)(4) because she possessed credo blades. <u>See</u> <u>id</u>. Yet her argument does not accurately reflect the Board's conclusion. The Board heard the petitioner's testimony that she had never used the credo knives and blades on a client, and that she merely had them because they had been left by a previous owner and she was unsure how to dispose of them. The Board specifically stated that it did not find the petitioner's testimony to be persuasive, implying that it concluded that credo blades and knives were actually being used at Nail Care. Furthermore, there was evidence that the blades were in fact being used; Green testified that the blades were stored in "pedi-carts," which are used by Nail Care employees to hold their tools and supplies while servicing customers. Thus, we find the petitioner's argument unconvincing.[2]

---

[2] The petitioner also claims that the amounts of the fines levied against her violate her due process rights because she was held responsible for the failure of other manicurists to disinfect implements and tables, and because the computation of the fine amounts was arbitrary. The Board contends that this argument is not preserved because the petitioner did not dispute the fines after the inspections, nor did she raise this issue during the hearing. Rather, she raised this issue for the first time in her motion for reconsideration. We disagree with the Board's position because this issue was not readily apparent at the time of the hearing: the notice of hearing given to the petitioner did not allege as a ground for discipline her failure to pay prior fines, and the Board did not mention the fines in the context of its action against the petitioner until it stated, as part of its sanction, that the petitioner pay prior fines within 90 days. <u>Cf</u>. <u>State v. Mouser</u>, 168 N.H. 19, 28 (2015); <u>Mt. Valley Mall Assocs. v. Municipality of Conway</u>, 144 N.H. 642, 654-55 (2000) (party cannot raise an issue for the first time in motion for reconsideration when the issue was readily apparent at the time the party initially filed for relief). However, the issue is barred on <u>res judicata</u> grounds because the petitioner could have challenged the fines before the Board (and appealed to this court) when they were first assessed, but failed to do so. <u>See</u> <u>Meier v. Town of Littleton</u>, 154 N.H. 340, 342 (2006); <u>N.H. Admin. R.</u>, Bar 404.05.

C

Finally, the petitioner asserts that the Board disregarded its own procedures and violated her due process rights by failing to attach the underlying complaint to the notice of hearing and provide her with Green's investigatory report. The petitioner argues further that the Board erred by failing to accurately specify the legislative authority for the proposed action. The Board responds that its failure to attach the underlying complaint to the notice of hearing was harmless error, and that it was not required to affirmatively provide the investigatory report without a discovery request.

"An error is considered harmless if it is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party asserting it." McIntire v. Lee, 149 N.H. 160, 167 (2003). Here, Rule 206.02 states that the "notice commencing an adjudicatory proceeding shall . . . [a]ttach any complaint against the licensee that forms, in whole or in part, the basis of the issues to be resolved." N.H. Admin. R., Bar 206.02. The Board admittedly erred by not doing so. However, it did include all of the substantive points of the complaint in the notice of hearing, as well as the date that the complaint was received and the complainant's name. In addition, the Board sent the petitioner a copy of the complaint as an exhibit two weeks before the hearing. Considering the totality of these circumstances, we do not believe that the Board's failure amounts to an error that is prejudicial to the petitioner's rights. See McIntire, 149 N.H. at 167.[3]

Similarly, we disagree with the petitioner's claim that the Board violated Rule 217.03 by failing to provide her with a copy of the investigatory report prior to the hearing. This claim requires us to engage in regulatory interpretation. When interpreting regulations, "[w]e first look to the language of the . . . regulation itself, and, if possible, construe that language according to its plain and ordinary meaning." Appeal of Old Dutch Mustard Co., 166 N.H. 501, 506 (2014). When the language of the regulation is clear on its face, its meaning is not subject to modification. Id. We will neither consider what the Board might have said nor add words that it did not see fit to include. Id. Furthermore, we interpret regulations in the context of the overall regulatory scheme and not in isolation. Id. Our goal is to apply regulations in light of the Board's intent in enacting them, and in light of the policy sought to be advanced by the entire regulatory scheme. Id.

---

[3] Furthermore, we find that the Board's incorrect citations in the notice of hearing are harmless. See McIntire, 149 N.H. at 167. Although the petitioner is correct in claiming that the Board provided slightly incorrect citations of RSA 313-A:22 several times in the notice of hearing by omitting a "II" entirely or typing it in the wrong part of the citation, the Board did correctly specify that RSA 313-A:22 was the statute violated. Combined with the specific description of the violations observed by Green and the customer and the extensive use of various subsection letters that can only be found in RSA 313-A:22, II, the petitioner could not reasonably have misunderstood the nature of the violations alleged.

Rule 217.03 states only that the investigatory report "shall be made available." N.H. Admin. R., Bar 217.03 (f). The definition of "available" is "[c]apable of use for the accomplishment of a purpose" or something "that is accessible or may be obtained." Webster's Third New International Dictionary 150 (unabridged ed. 2002). Thus, "shall be made available" means that the Board must make the investigatory report accessible, obtainable, or capable of being used by the petitioner. N.H. Admin. R., Bar 217.03 (f). Consequently, there was no affirmative obligation upon the Board to provide the investigatory report until the petitioner requested it. Furthermore, because the petitioner's due process claim is predicated on a finding that the Board acted contrary to its own procedures, we find that there was no violation of the petitioner's due process rights.

III

For the above reasons, we affirm the Board's decision.

Affirmed.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.