**EMPIRE ACQUISITION GROUP, LLC**

v.

**ATLANTIC MORTGAGE COMPANY, INC.**

No. 2010–66–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2012.

William R. Landry, Esq., Providence, for Plaintiff.

Ronald M. LaRocca, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The plaintiff, Empire Acquisition Group, LLC, appeals from a grant of summary judgment in favor of the defendant, Atlantic Mortgage Company, Inc. The plaintiff contends that summary judgment was improperly granted in favor of the defendant because genuine issues of material fact are in dispute. This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On September 29, 2004, plaintiff and defendant executed an agreement, entitled "Sales Agreement and Deposit Receipt," for the purchase and sale of an unimproved parcel of real property. In this agreement, plaintiff agreed to purchase from defendant a vacant lot located off South County Trail in Charlestown, Rhode Island, designated as Assessor's Plat No. 22, lot No. 7, for a total purchase price of $80,000, with $3,000 to be paid as a deposit. The agreement included a "Physical Inspection and Due Diligence" clause, which provided plaintiff with a ninety-day due-diligence period in which to perform all desired "inspections and inquiries." The clause also afforded plaintiff the unilateral right to terminate the agreement if "the results of such inspections [were] unsatisfactory" to plaintiff.

The termination clause was particularly pertinent to this agreement because plaintiff wished to make the vacant, land-locked property at issue a "viable lot." The plaintiff faced several obstacles to his being able to do so, including establishing the validity of a right-of-way, surveying the land to satisfy setback regulations, resolving possible abutting property-owner claims,[1] and researching "soil conditions, [Individual Sewage Disposal System (ISDS) ] considerations, [and] utility availability." This process included applying to the Rhode Island Department of Environmental Management (DEM) and the Rhode Island Department of Transportation (DOT) for permits and approvals. The agreement, however, was not conditioned upon plaintiff's obtaining such permits and approvals; instead, it provided that the property was being sold "[a]s [i]s."

The agreement stated that the closing date was to be one hundred business days from the date of the agreement's execution "or at any such time and place as may be agreed upon by the parties." The agreement did not include a "time is of the essence" provision. On January 25, 2005, before reaching the slated closing date, plaintiff submitted a written request to extend the due-diligence period for an ad-

---

1. The defendant notified plaintiff on September 29, 2004, the day the agreement was executed, that there was "a possible property line dispute" with an adjoining landowner.

ditional 120 business days from the date of correspondence. The request delineated the following reason for the additional time:

"[W]e have incurred delays with the soil evaluations and are still attempting to schedule them with DEM. After they are complete, our engineers [will] design the ISDS system, then submit back to DEM for approval. We will work as quickly as possible to make this happen but unfortunately the timing of the necessary steps [is] not always within our control."

The defendant granted this extension. On July 9, 2005, plaintiff again made a request for an extension of the due-diligence period. At this time, plaintiff requested an additional ninety business days from the date of the correspondence, stating: "we have successfully performed soil evaluations on this site and are now in the process of completing the survey and ISDS design for DEM approval." On July 12, 2005, defendant granted this second extension. Thereafter, on November 15, 2005, plaintiff requested a third extension. This request was for an additional ninety business days. The request provided:

"As per our last correspondence, our engineers are still working on the survey. This has been an extremely difficult and time-consuming process as there are conflicting deed descriptions of the property and many of the reference points that the deeds refer to are no longer present. Furthermore, we've had to work with the Bureau of Land

Management to further research the land and work out all of the issues.

"With all of this said, I'm told that we should [be] wrapping up survey in the next few weeks. We'll then design the ISDS and submit to DEM for approval.

"I appreciate your patience and [am] confident that we'll be able to close this deal early next year."

This third extension was granted by defendant. As a result, the due-diligence period was set to end March 27, 2006. Before this date, however, plaintiff acquired its sought-after permits and approvals from both the DOT and the DEM.[2]

Nevertheless, no closing occurred on March 27, 2006, or on any date thereafter. Instead, the next communication between the parties occurred on June 5, 2006,[3] at which time defendant sent plaintiff a letter indicating that the "agreements for extensions to close h[ad] expired" and offering a "renegotiated" sale price of $115,000 for the property at issue to more closely reflect the market rate of the property.[4] On June 6, 2006, plaintiff responded to defendant explaining its intention to close "without further modification or amendment of the Agreement" and urging that the transaction be closed "as expeditiously as possible." The plaintiff further notified defendant that it had recorded "a notice of the purchase and sale agreement in the land evidence records of the Town of Charlestown." This communication was the first time that plaintiff had attempted to contact

---

2. On March 14, 2006, plaintiff received approval from the DOT for its physical alteration permit application; on March 21, 2006, it received approval from the DEM for its ISDS application.

3. The defendant wrote a letter to plaintiff dated May 26, 2006; however, this letter was not sent to plaintiff until June 5, 2006.

4. The defendant's letter stated that the "prices of building lots have increased considerably" since the agreement was executed and that the property at issue now had a "minimum selling price" of $149,900. Further, defendant offered $115,000 as a "renegotiated" price because it "amount[ed] to an increase of half of the appreciation" of the property.

defendant since requesting its third extension on November 15, 2005.

On October 3, 2007, plaintiff filed a complaint in Superior Court seeking specific performance of its agreement with defendant, as well as "incidental and consequential damages." On that same day, plaintiff also recorded a notice of *lis pendens* concerning the property at issue. On October 25, 2007, defendant filed an answer denying plaintiff's allegations; it also counterclaimed seeking declaratory relief that the agreement, notice of agreement, and *lis pendens* be declared null and void (count 1) and asserting a claim for breach of contract (count 2).[5]

The defendant filed a motion for summary judgment on April 9, 2009, on plaintiff's complaint and on counts 1 and 2 of defendant's counterclaim. To support its motion, defendant relied upon the deposition testimony of plaintiff's manager, an affidavit of defendant's president, plaintiff's lack of response to defendant's request for admissions, and various other supporting documents. On June 5, 2009, plaintiff filed an objection and a memorandum in opposition to defendant's motion for summary judgment. The plaintiff attached one document in support of its opposition and otherwise relied on defendant's evidence.

On June 15, 2009, the trial justice held a hearing on defendant's motion. After hearing arguments from both parties about the "reasonableness" of their actions after the due-diligence period had expired, the trial justice noted that it had been plaintiff's burden to contact defendant to close and that plaintiff had failed to do so without any explanation for its lack of "diligence." Consequently, the trial justice granted defendant's motion. Partial

final judgment was entered on August 3, 2009, pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. Thereafter, plaintiff filed a notice of appeal.

## II

### Standard of Review

■ "This Court reviews a lower court's grant of a motion for summary judgment *de novo*, 'employing the same standards and rules used by the hearing justice.'" *Generation Realty, LLC v. Catanzaro*, 21 A.3d 253, 258 (R.I.2011) (quoting *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009)). We will affirm the grant of summary judgment only "[i]f we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law * * *." *Pereira v. Fitzgerald*, 21 A.3d 369, 372 (R.I.2011) (quoting *Lacey v. Reitsma*, 899 A.2d 455, 457 (R.I.2006)). "The party opposing a motion for summary judgment 'carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" *Vaillancourt v. Motta*, 986 A.2d 985, 987 (R.I.2009) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996)).

## III

### Discussion

The plaintiff argues that "this case is a particularly poor candidate for summary judgment inasmuch as it involves a fact-

---

5. The defendant's counterclaim also asserted tortious interference, breach of good faith and fair dealing, misrepresentation, and slander of title; however, those claims are not before this Court.

intensive dispute regarding how 'reasonable' or 'unreasonable' the parties were." Further, plaintiff contends that defendant "used the parties' mutual disregard of the designated closing date as a 'gotch-ya' to take advantage of more than a year's worth of expensive permitting efforts by [plaintiff] regarding the property." The plaintiff also maintains it was "at all relevant times ready, willing and able to close under the Agreement."

In response, defendant argues that "[n]o genuine issues of material fact exist regarding the Agreement's expiration pursuant to its own terms." In so doing, defendant points to plaintiff's failure to produce any evidence explaining why it did not timely close or to prove that it was acting in good faith. Additionally, defendant contends that specific performance was unavailable to plaintiff as a matter of law because plaintiff did not establish that it was at all times ready and willing to perform.

 "Ordinarily contract provisions relating to time do not by their mere presence in an agreement make time of the essence thereof so that a breach of the time element will excuse nonperformance." *Lajayi v. Fafiyebi*, 860 A.2d 680, 688 (R.I. 2004) (quoting *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970)). "That is, explicit time limits 'standing alone and without more do not indicate that the time[s] fixed for performance [are] intended by the parties to be a material or an essential part of their agreement.'" *1800 Smith Street Associates, LP v. Gencarelli*, 888 A.2d 46, 52 (R.I.2005) (quoting *Safeway System, Inc. v. Manuel Bros., Inc.*, 102 R.I. 136, 145–46, 228 A.2d 851, 856 (1967)). It is well es-

tablished that, absent explicit contractual language to the contrary, "parties to a contract for the sale of property have a reasonable amount of time after the scheduled closing date within which to complete the closing." *Parker v. Byrne*, 996 A.2d 627, 633 (R.I.2010). "What is a reasonable time depends upon the circumstances of each case." *Durepo v. May*, 73 R.I. 71, 75, 54 A.2d 15, 18 (1947).

 The agreement in this case did not contain an explicit "time is of the essence" clause. To the contrary, this agreement was expressly tolerant of time adjustments, specifically stating that the closing was to occur one hundred days from the agreement's execution "or at any such time * * * as may be agreed upon by the parties." The parties' actual dealings mirrored this lenient approach to temporal constraints, as it is uncontroverted that subsequent to the agreement's execution, defendant, upon request, willingly granted plaintiff three extensions. Accordingly, because we are satisfied that time was not of the essence with respect to this contract, the parties were obliged to perform under the agreement only within a reasonable time of the contemplated performance dates. *See Gencarelli*, 888 A.2d at 53.

The defendant contends that plaintiff "flagrantly ignore[d]" the agreement's time requirements and made no effort to close on the agreed-upon date or at a reasonable time thereafter. Indeed, plaintiff failed to initiate efforts with defendant to close at any time before June 6, 2006— the day after defendant notified plaintiff of its intention to terminate the original agreement. Although plaintiff now cryptically disputes this fact,[6] it was deemed

---

6. For example, plaintiff's supplemental memorandum before this Court asserts: "[The plaintiff's] principal * * * testified (at his deposition below) that, shortly before the March

27, 2006 closing date, he engaged * * * a closing lawyer to contact [defendant's] attorney. * * * However, for reasons that are not completely clear, [defendant] delayed and was

admitted by the Superior Court as a result of plaintiff's failure to timely respond to defendant's request for admissions.[7] *See* Rule 36(a) of the Superior Court Rules of Civil Procedure (providing a "matter is admitted unless, within 30 days after service of the request, * * * the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter"); *Travelers Insurance Co. v. Builders Resource Corp.*, 785 A.2d 568, 569 (R.I.2001) (mem.) (holding that "failure to file timely responses to [a] request for admissions render[s] them admitted"). Further, plaintiff failed to provide sufficient evidence to the contrary.[8] Therefore, this Court accepts as true the fact that plaintiff made no contact with defendant from November 15, 2005, until June 6, 2006.

■ The issue, then, is whether it was reasonable for plaintiff to attempt its performance under the agreement on June 6, 2006, after more than two months had expired since the latest agreed-upon date for closing. Delays in contracts for the sale of land are not uncommon and it is accepted practice for people to overlook them when "the injury caused by delay is little or nothing." *Lajayi*, 860 A.2d at 688 (quoting *Thompson v. McCann*, 762 A.2d 432, 438 (R.I.2000)). Nevertheless, this understanding does not cloak a party with the unbridled discretion to be "completely oblivious to a stipulation in a contract relating to time." *Id.* (quoting *Jakober*, 107

R.I. at 114, 265 A.2d at 435). Rather, each party is bound to proceed reasonably and in good faith toward the completion of the contemplated performance. *Id.*

■ Generally, the determination of whether a party's conduct is reasonable under the facts and circumstances of the case is a question of fact, which ordinarily cannot be disposed of by summary judgment. *See DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 614 (R.I.2011) (stating in the context of a multiple claimant insurance action that "the reasonableness of an insurer's action * * * will normally be a question for a fact-finder to decide"); *see also R.E. King v. Avtech Aviation, Inc.*, 655 F.2d 77, 78 (5th Cir.1981) (stating in a negligence case that "the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case * * * cannot ordinarily be disposed of by summary judgment") (quoting *Gross v. Southern Railway Co.*, 414 F.2d 292, 296 (5th Cir. 1969)). However, if the sequence of events in the case "admits of only one reasonable [disposition], then the court should intervene and resolve the matter as a question of law." *Parker*, 996 A.2d at 632 (quoting *Women's Development Corp. v. City of Central Falls*, 764 A.2d 151, 158 (R.I. 2001)).

In this case, the sequence of events is susceptible of only one reasonable disposition—*viz.*, plaintiff's unexplained and unexcused inaction after the final scheduled

---

unresponsive." Yet, in the same supplemental memorandum, plaintiff also states: "It is true that several weeks passed after the scheduled extended closing date before [plaintiff] initiated efforts to close. This was clearly inadvertent and accidental as [plaintiff] readily signaled its willingness to schedule and conclude the closing immediately upon contact by [defendant]."

7. The plaintiff failed to respond to defendant's request for admission of the following fact: "[The plaintiff] did not contact [defendant] concerning the Property from November 15, 2005 through June 5, 2006."

8. The plaintiff's attorney admitted as much at the summary judgment hearing, stating: "We have no evidence. We have hearsay evidence * * *."

closing date was unreasonable. The parties' course of conduct after executing their agreement illuminates this conclusion. The parties established a pattern through their communications and dealings: if plaintiff experienced difficulties or delays in obtaining inspections and permits to its satisfaction, it simply needed to request an extension of the due-diligence period. Based upon this past practice, it is reasonable to conclude that defendant would grant an extension. Despite this pattern of practice, upon the expiration of the final extension, plaintiff failed to communicate with defendant at all. The plaintiff did not inform defendant that it was ready and willing to close, nor did it inform defendant that it was in need of another extension. Instead, plaintiff waited until defendant's notice that the original agreement had expired before showing any measure of interest in moving forward with the closing.

The plaintiff has failed to provide any explanation for its lack of communication to show that it was proceeding reasonably and in good faith. It certainly was not because plaintiff remained hard at work obtaining approvals and permits, since these were obtained before the final scheduled closing date. As this Court previously has stated, the absence of a "time is of the essence" clause does not enable "a party [to] be completely oblivious to a stipulation in a contract relating to time." *Lajayi*, 860 A.2d at 688 (quoting *Jakober*, 107 R.I. at 114, 265 A.2d at 435). Here, that is exactly what plaintiff did. *Cf. Keystone Properties and Development, LLC v. Campo*, 989 A.2d 961, 964–65 (R.I.2010) (stating that "passage of time, standing alone, [was][in]sufficient to warrant a conclusion that the agreement was abandoned" when "[t]he record [was] devoid of any intent * * * of [plaintiff] to abandon the [a]greement" because plaintiff "never backed off"). This Court simply cannot accept plaintiff's enigmatic silence as reasonable under the facts and circumstances of this case. Therefore, we hold that there is no genuine issue of material fact for trial.

The defendant having presented evidence of the past practice of the parties and the total lack of communication from the plaintiff for a period in excess of sixty days, it became incumbent upon the plaintiff to respond with specific facts that would constitute a genuine issue of material fact. *See* Rule 56(e) of the Superior Court Rules of Civil Procedure ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response * * * must set forth specific facts showing that there is a genuine issue for trial."). The plaintiff, however, presented no evidence either explaining its silence or supporting its contention that it was at all times after March 27, 2006, ready, willing, and able to perform under the contract. Accordingly, we are satisfied that the trial justice correctly concluded that there was no genuine issue of material fact to be resolved at trial and that the defendant was entitled to judgment as a matter of law. We, therefore, affirm the grant of summary judgment in favor of the defendant on the plaintiff's complaint, as well as on counts 1 and 2 of the defendant's counterclaim.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court for fur-

ther proceedings in accordance with this opinion.