June 16, 2021

**Supreme Court**

No. 2019-245-Appeal.
(PC 12-4078)

Sergio A. DeCurtis            :

v.            :

Visconti, Boren & Campbell Ltd. et al.   :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or  Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2019-245-Appeal.
(PC 12-4078)
Concurrence begins on Page 15
Concurrence begins on Page 17

Sergio A. DeCurtis                    :

v.                            :

Visconti, Boren & Campbell Ltd. et al.   :

Present: Suttell, C.J., Goldberg, Robinson, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  The plaintiff, Sergio DeCurtis (plaintiff or Mr. DeCurtis), appeals from a partial final judgment of the Superior Court in favor of the defendants, Visconti, Boren & Campbell Ltd. (VBC) and Richard Boren (collectively defendants), in this action alleging that the defendants committed legal malpractice in the drafting of Mr. DeCurtis's antenuptial agreement and in rendering advice related to that agreement and a postnuptial agreement.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions, and after reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

- 1 -

## Facts and Procedural History

The reader may find the facts of this case somewhat familiar, as this case has previously been before this Court. Our prior decision may be found at *DeCurtis v. Visconti, Boren & Campbell, Ltd.*, 152 A.3d 413 (R.I. 2017). The facts discussed herein are only those relevant to the instant appeal.

On March 2, 2000, Mr. DeCurtis engaged VBC, the law firm that employed Attorney Boren at the time, to draft an antenuptial agreement for him and his then-fiancée, Michelle Tondreault. On March 22, 2000, Mr. DeCurtis and Ms. Tondreault executed the agreement, without making any changes to VBC's draft, and they were married a few days later.

In 2005, Ms. Tondreault filed the first of what would be two divorce petitions in the Family Court. The couple ultimately negotiated a settlement, and the 2005 petition was dismissed after the couple executed a postnuptial agreement, which was drafted by Attorney Boren. In June 2010, Ms. Tondreault again filed for divorce. In advance of trial, she filed a memorandum wherein she asserted that neither the antenuptial agreement nor the postnuptial agreement excluded from equitable distribution the parties' earnings, income, or assets earned or acquired during the marriage. Moreover, she argued that separate property, as defined in a valid antenuptial agreement, is not "forever frozen" as separate property in light of this Court's opinion in *Marsocci v. Marsocci*, 911 A.2d 690 (R.I. 2006). Mr. DeCurtis,

in his pretrial memorandum, countered that income and earnings received during the marriage retain their status as separate property. He also argued that *Marsocci* is distinguishable because the antenuptial agreement at issue in that case lacked a transmutation clause, unlike the antenuptial agreement executed by Ms. Tondreault and Mr. DeCurtis.[1]

The case was reached for trial on June 21, 2011. Prior to opening arguments, the Family Court justice admitted the antenuptial and postnuptial agreements as joint exhibits and confirmed that neither party intended to offer "any supplemental evidence * * * indicating what the language [of the agreements] means or the interpretation[.]" The justice then informed the parties that, under his reading of the law and the two agreements, "income that was derived during the period of the marriage" was not excluded from the marital estate.[2] Following this pronouncement from the Family Court justice, Mr. DeCurtis indicated that he believed that his income would not become part of the marital estate to be divided between him and

---

[1] Under the doctrine of transmutation, "property can be converted from nonmarital property into marital property if changed in form and put into joint names." *Wu-Carter v. Carter*, 179 A.3d 711, 721 (R.I. 2018) (quoting *Stephenson v. Stephenson*, 811 A.2d 1138, 1142 (R.I. 2002)). A "transmutation clause" in an antenuptial agreement seeks to prevent separate property from being considered marital property and, thus, subject to equitable distribution.

[2] Although both Ms. Tondreault and Mr. DeCurtis had cited *Marsocci v. Marsocci*, 911 A.2d 690 (R.I. 2006), in pretrial memoranda, the Family Court justice made no reference to *Marsocci*, nor its impact, in providing his interpretation of the law and the two agreements.

Ms. Tondreault upon divorce.  The justice explained to Mr. DeCurtis that that was the "opposite" of his reading of the law, and the trial commenced.  The couple agreed to settle the matter a few days later.

Thereafter, on August 8, 2012, Mr. DeCurtis filed a three-count complaint in the present case against defendants in Superior Court.  Mr. DeCurtis alleged professional negligence and breach of fiduciary duty against Attorney Boren and vicarious liability against VBC for the acts of Attorney Boren.  More specifically, Mr. DeCurtis alleged that Attorney Boren had failed to draft the antenuptial agreement to protect his assets and failed to advise him "of any risk associated with commingling his premarital assets" with marital property.[3]  The defendants filed an answer and asserted various affirmative defenses, including the defenses of voluntary payment and failure to mitigate damages.

The parties engaged in discovery, during which a dispute arose regarding the discoverability of antenuptial and postnuptial agreements drafted by Attorney Boren for other clients.  That issue came before this Court by way of defendants' petition for certiorari, which we granted, and in January 2017, we issued our decision in *DeCurtis*, cited *supra*.  As we have noted, the facts and details of that decision are not relevant to the instant appeal and thus are not repeated here.

---

[3] Additionally, Mr. DeCurtis alleged in his complaint that Attorney Boren owed him a duty to "exercise the same degree of care, skill, and diligence as a reasonable, prudent attorney acting in the same or similar circumstances."

Upon remand to the Superior Court for further proceedings, Mr. DeCurtis moved for partial summary judgment. He asked the Superior Court to decide three issues as a matter of law. First, he asked the court to determine that Attorney Boren was not "exonerate[d]" from his alleged malpractice in drafting the antenuptial agreement because of a potential change in the law based on our decision in *Marsocci*, cited *supra*, or, alternatively, to certify a question to this Court to clarify the meaning of *Marsocci*. Second, plaintiff asked the court to determine, as a matter of law, that the antenuptial agreement drafted by Attorney Boren did not contain language to protect plaintiff's earnings. Third, and finally, plaintiff asked the court to determine that the voluntary-payment defense asserted by defendants had not been recognized in Rhode Island, was the minority view, was inapplicable to this case because the settlement payment was not voluntary, and contravened plaintiff's duty to mitigate his damages.

The defendants filed an objection and a cross-motion for summary judgment on June 18, 2018. The defendants raised five arguments in support of their motion. They argued that Attorney Boren was entitled to two forms of immunity: (1) immunity due to a change in the law that occurred subsequent to the drafting of the agreements and (2) judgmental immunity relative to his choice of language in the antenuptial agreement. Additionally, defendants argued that, if provisions protecting a spouse's substantial assets are enforceable, a "pure construction" of the

antenuptial agreement at issue in this case would have protected plaintiff's assets. The defendants also argued that one allegation in the complaint could not constitute malpractice as a matter of law.[4]  Finally, defendants claimed that plaintiff was a "voluntary payer" of a settlement and therefore had waived his right to seek "indemnity" from defendants.

The trial justice rendered a written decision on January 28, 2019.  In analyzing the questions presented, the trial justice consolidated the various issues raised.  With respect to whether *Marsocci* changed the law to bar the exclusion of marital income from equitable distribution, regardless of the existence of antenuptial or postnuptial agreements, the trial justice declined to certify the question to this Court without an agreed statement of facts.  He also declined to interpret *Marsocci* without further development of the factual record.  The trial justice determined that questions involving the voluntary-payer doctrine, proof of damages, and mitigation of damages were not appropriate for summary judgment because further discovery was required.  Turning to the professional negligence claim and alleged immunity defenses, the trial justice determined that the questions raised required analysis of what duty Attorney Boren owed to Mr. DeCurtis in drafting the agreements.

---

[4] Paragraph 35(ix) of the complaint alleged that "Attorney Boren breached his duty to Mr. DeCurtis by * * * advising and allowing Mr. DeCurtis to make a substantial settlement payment to Mrs. DeCurtis without first getting her to sign a property settlement agreement[.]"  The defendants did not argue this point any further in their memorandum, except to cite a case in a footnote to support their contention.

The trial justice analyzed Attorney Boren's duty by applying the *ad hoc* approach discussed in our opinion in *Woodruff v. Gitlow*, 91 A.3d 805 (R.I. 2014).[5] As part of the analysis, the trial justice determined that the antenuptial and postnuptial agreements would have been adequate to protect Mr. DeCurtis at the time of drafting in 2000, but stated that our opinion in *Marsocci* in 2006 "may" have changed the law. The trial justice reasoned that, if he were to impose a duty on Attorney Boren to include additional language at a time when no Rhode Island law imposed such a duty, attorneys would be required to predict "infallibly" how courts would interpret the documents they draft. He concluded his analysis by finding that Attorney Boren's duty was to draft antenuptial and postnuptial agreements that "were in compliance with the law at the time in Rhode Island." The trial justice therefore declined to impose a duty on Attorney Boren to include any additional language in those agreements and granted summary judgment in favor of defendants

---

[5] The factors we discussed in *Woodruff v. Gitlow*, 91 A.3d 805 (R.I. 2014), with respect to the determination of whether a duty is in fact present in a particular case are:

> "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *Woodruff*, 91 A.3d at 815 (quoting *Bucki v. Hawkins*, 914 A.2d 491, 495-96 (R.I. 2007)).

"on the narrow issue of [Attorney] Boren's duty" in drafting the antenuptial and postnuptial agreements.

Thereafter, the parties filed a statement of agreed-upon facts with accompanying exhibits, as well as renewed motions for partial summary judgment.[6] Specifically, the parties asked the trial justice to enter partial summary judgment on the court's interpretation of *Marsocci* and the effect of that opinion on this case.[7] The plaintiff also asked the trial justice to deny defendants' motion for summary judgment on the issue of Attorney Boren's entitlement to judgmental immunity.

The trial justice rendered a bench decision on the renewed cross-motions for summary judgment on April 8, 2019. The trial justice denied plaintiff's motion and granted defendants' motion based on judgmental immunity. He further clarified that his decision rested upon his interpretation of *Marsocci*.

Thereafter, plaintiff moved for entry of partial final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure, which the trial justice granted. Partial final judgment was entered on April 25, 2019, and plaintiff timely appealed.

---

[6] Prior to the statement of agreed upon facts being filed, plaintiff filed a first amended complaint on June 25, 2018. The amended complaint is substantially similar to the original complaint, and the amendment does not affect our decision here. The defendants added judgmental immunity as an affirmative defense in their answer to the amended complaint.

[7] Additionally, plaintiff again argued that the trial justice should certify to this Court the question of the interpretation of *Marsocci* in the context of this case.

- 8 -

## Standard of Review

"We have long recognized that summary judgment is a drastic remedy * * * and * * * should be dealt with cautiously." *Behroozi v. Kirshenbaum*, 128 A.3d 869, 872 (R.I. 2016) (brackets omitted) (quoting *Laplante v. Rhode Island Hospital*, 110 A.3d 261, 264 (R.I. 2015)). "This Court reviews a lower court's grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the [trial] justice." *Jessup & Conroy, P.C. v. Seguin*, 46 A.3d 835, 838 (R.I. 2012) (quoting *Empire Acquisition Group, LLC v. Atlantic Mortgage Co.*, 35 A.3d 878, 882 (R.I. 2012)). "We will affirm the grant of summary judgment only if we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law[.]" *Id.* (brackets omitted) (quoting *Empire Acquisition Group, LLC*, 35 A.3d at 882). "Moreover, the party opposing a summary-judgment motion 'has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" *Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1267 (R.I. 2009) (quoting *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I. 2005)).

**Discussion**

Before the Court, Mr. DeCurtis raises two issues. First, he contends that the trial justice erred in deciding that Attorney Boren did not have a duty to include additional language in the antenuptial agreement. Second, he argues that the trial justice erred by granting judgmental immunity to defendants based on *Marsocci*. We address each of these contentions in turn.

**A**

**Additional Language in Antenuptial Agreement**

The plaintiff argues that the trial justice improperly determined that Attorney Boren did not have a duty to include additional language in the antenuptial agreement. Mr. DeCurtis contends that the question presented in the Superior Court was whether Attorney Boren erred by omitting language that would have protected plaintiff's earnings from becoming marital property. However, Mr. DeCurtis asserts that in considering that discrete question, the trial justice misconstrued Attorney Boren's duty; he contends that the trial justice further conflated the question of duty with that of the standard of care by deciding that Attorney Boren was not required to include special protective language in the agreement.

The defendants counter that the trial justice correctly determined the existence and scope of the duty owed by Attorney Boren to Mr. DeCurtis. The defendants also contend that the trial justice did not decide a factual question when he determined

- 10 -

that Attorney Boren had not erred by drafting antenuptial and postnuptial agreements that omitted special protective language.

We begin our analysis by noting that the existence of a duty is a question of law. *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1224 (R.I. 1987). "Whether there exists a duty of care running from the defendant to the plaintiff is, therefore, a question for the court and not for the jury." *Id.* "If no such duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Id.* at 1225. We have, however, previously recognized a duty that arises out of the attorney-client relationship which "includes in essential part providing competent representation to the client, including the utilization of competent legal knowledge, skill, thoroughness and case preparation reasonably necessary both to protect and to advance the client's interests." *Vallinoto v. DiSandro*, 688 A.2d 830, 834 (R.I. 1997).

In his first motion for partial summary judgment, Mr. DeCurtis did not seek a determination as to the duty owed with respect to his negligence-based claim; an analysis of the *ad hoc* factors under *Woodruff* was unnecessary.[8] It was undisputed

---

[8] Mr. DeCurtis alleged in his amended complaint that Attorney Boren owed a duty to "exercise the same degree of care, skill, and diligence as a reasonable, prudent attorney acting in the same or similar circumstances." Thus, although defendants asserted in support of their motion for summary judgment that "[i]t is undisputed by the parties that [Attorney] Boren's duty was to construct a prenuptial agreement based on the circumstances that existed at the time of drafting[,]" there was no agreement on that point.

that Attorney Boren and Mr. DeCurtis had an attorney-client relationship; therefore, the duty with respect to that relationship is well settled. *See Vallinoto*, 688 A.2d at 834.

The specific question presented in plaintiff's motion for partial summary judgment was whether the antenuptial agreement contained the requisite language to protect Mr. DeCurtis's earnings as intended. That was a question of contract interpretation that required the trial justice to evaluate the antenuptial agreement under our contract-analysis framework, beginning with a determination as to whether the contract is clear and unambiguous. *See In re 25 Burnside Avenue*, 204 A.3d 612, 619 (R.I. 2019) ("The determination of whether a contract's terms are ambiguous is a question of law[.]"). However, the trial justice instead assessed the *Woodruff* factors and determined that Attorney Boren had no obligation to include additional language in the agreements. In doing so, the trial justice did not answer the question presented, but rather decided an issue that pertains to the standard of care—whether Attorney Boren exercised the same degree of care, skill, and diligence as a reasonable, prudent attorney acting in the same or similar circumstances. This was a question of fact for the jury and inappropriate for determination on summary judgment.

Therefore, for the foregoing reasons, the summary judgment granted in favor of defendants on the basis of the determination that Attorney Boren did not owe a

duty to Mr. DeCurtis to include additional language in the agreements was in error and is hereby vacated.

## B

## Judgmental Immunity

Second, plaintiff contends that the trial justice erred in granting judgmental immunity in favor of defendants based on *Marsocci*. The defendants counter that judgmental immunity is applicable to this case and provides a complete defense because the state of the law changed after our decision in *Marsocci* in a way that affected the enforceability of the agreements at issue in this case.[9] During oral argument before this Court, defendants contended that our decision in *Scuncio Motors, Inc. v. Teverow*, 635 A.2d 268 (R.I. 1993), recognized judgmental immunity as a valid defense in the State of Rhode Island. We disagree.

Judgmental immunity has never been recognized in Rhode Island and is not the law in this jurisdiction. In *Scuncio Motors*, we held that the defendant attorney was entitled to a directed verdict on a professional negligence claim because the plaintiff clients had failed to prove proximate cause. *See Scuncio Motors*, 635 A.2d at 269. Our decision did not turn on the question of immunity on the part of the defendant attorney. *See id.*

---

[9] We note that this Court has not determined the effect, if any, of *Marsocci* on the enforceability of antenuptial agreements, and we decline to do so here.

- 13 -

Furthermore, we decline to address the question of judgmental immunity based on the facts before us. Because we vacate the Superior Court's grant of summary judgment regarding Attorney Boren's alleged negligence, it is yet to be determined whether Attorney Boren will require the shelter such immunity may provide, should this Court decide to adopt the principle. *See* 2 Ronald E. Mallen, 2 Legal Malpractice § 19:1 (Westlaw Jan. 2021 Update) ("The defense [of judgmental immunity] is not necessary unless the lawyer made a judgmental error. Absent an error, there is no wrong, no matter how 'negligent' the lawyer's conduct.").

Because to date we have not recognized judgmental immunity as a valid defense in the State of Rhode Island, and because Attorney Boren's alleged negligence remains an issue in the case after our decision today, the grant of summary judgment on the issue of judgmental immunity is also vacated.

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court. The record may be returned to the Superior Court.[10]

---

[10] The Court is hopeful that the parties will continue working toward a final resolution of this matter in the Superior Court by settlement or trial. We again "pause to note our strong preference for 'avoiding piecemeal appellate review by delaying entry of judgment until all claims involving all parties are ripe for disposition and entering judgment as to all only when that time arrives.'" *Cathay Cathay, Inc. v. Vindalu, LLC*, 136 A.3d 1113, 1121 (R.I. 2016) (brackets omitted) (quoting *Metro Properties, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA.*, 934 A.2d 204, 207 (R.I. 2007)).

Justice Lynch Prata did not participate.


      **Justice Goldberg, concurring.**  I fully concur with the opinion of the majority, but nonetheless write separately to reaffirm the longstanding practice of the Supreme Court that, when a judgment is vacated and a case is remanded to the trial court, we scrupulously avoid any comment or hint of a preference for its resolution. This Court unfailingly strives to avoid placing our thumb on the scale of justice; our "opinions * * * speak forthrightly and not by suggestion or innuendo." *Fracassa v. Doris*, 876 A.2d 506, 509 (R.I. 2005). Nor is it "the role of a trial justice to attempt to read 'between the lines'" of an opinion to glean any hints or previews for the issues on remand. *Id*.

      This Court's exercise of jurisdiction is limited to actual, justiciable controversies, and we "will not entertain an abstract question or render an advisory opinion[.]" *H.V. Collins Company v. Williams*, 990 A.2d 845, 847 (R.I. 2010). Because we are remanding this case to the trial court, I am mindful that we should make scant comment about the issues that will confront the trial justice, save for our concern that this case is nearly nine years old. The conduct complained of occurred over two decades ago and the case has now been before this Court on two occasions.

- 15 -

There have been two summary-judgment decisions since we last remanded this case in 2017.

With those principles in mind, I simply note that the concept of judgmental immunity for lawyers has not been recognized as a valid defense in Rhode Island and is not properly before us.

In order to prevail in a negligence action, the plaintiff "must establish a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Ouch v. Khea*, 963 A.2d 630, 633 (R.I. 2009) (quoting *Selwyn v. Ward*, 879 A.2d 882, 886 (R.I. 2005)). This Court has "repeatedly cautioned that complaints sounding in negligence generally are not amenable to summary judgment and should be resolved by a fact finding at the trial court * * *." *Limoges v. Nalco Company*, 157 A.3d 567, 571 (R.I. 2017) (quoting *Rose v. Brusini*, 149 A.3d 135, 141 (R.I. 2016)).

A defendant's conduct in a negligence action should be analyzed in accordance with well-settled common law principles of negligence. This requires factfinding, not summary judgment. *Limoges*, 157 A.3d at 571.

Certainly, if the evidence is such that a defendant "could under no circumstances be held to be negligent," *McIntire v. Lee*, 816 A.2d 993, 1001 (N.H. 2003) (quoting *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 981 P.2d

236, 240 (Idaho 1999)), it is the role of the trial justice to so rule as a matter of law, in accordance with Rule 50 of the Superior Court Rules of Civil Procedure.

Accordingly, I concur in the majority decision with the aforementioned concerns about our appellate jurisprudence.

**Justice Robinson, concurring.** While I certainly respect what is set forth in the opinion of the Court and while I concur in its holding that the judgment of the Superior Court must be vacated, I view the case at hand in a manner that differs in some respects from the analytical appraisal of the majority. Accordingly, I join in the Court's judgment, but not in its opinion.[1] I have concluded that the interests of efficiency and clarity would best be served if I were to write this brief concurring opinion.

---

[1] I wish to echo the sentiment that is cogently expressed in footnote 10 of the Court's opinion to the effect that settlement of this long-brewing and complex dispute would be in the best interest of all concerned. *See Skaling v. Aetna Insurance Co.*, 799 A.2d 997, 1012 (R.I. 2002) ("It is the policy of this state to encourage the settlement of controversies in lieu of litigation.").

This is an important, difficult, and vexing case. It potentially will require judicial rulings on a number of issues—some being issues of first impression for this Court. As I peruse the presently existing record, I am keenly aware that I am unable to predict with any degree of accuracy what the ultimate result would be if this case were to be litigated to final judgment. However, I do know that settlement is often the most prudent course of action for *both* parties; there is much accumulated wisdom in the venerable "half a loaf" maxim.

I agree with the Court's view that further proceedings are necessary before this case can be justly resolved. Whether that process will necessarily eventuate in a trial or whether this case can be disposed of by the granting of a renewed motion for summary judgment on the basis of affidavits and/or other permitted materials is a subject that I need not opine upon at this juncture—although the dispositive motion alternative does not strike me as being at all chimerical. It is my view that there are instances when the issue of an alleged breach of a duty (which is indubitably an issue of law) can be resolved at the summary judgment phase. *See, e.g.*, *DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979) ("In Rhode Island the general rule is that negligence is a question for the jury *unless the facts warrant only one conclusion*.") (emphasis added); *Bergstrom v. Noah*, 974 P.2d 531, 554 (Kan. 1999) (holding that while questions of "professional negligence should be left to the trier of fact * * * there is a recognized exception to this rule. When, under the totality of circumstances as demonstrated by the uncontroverted facts, a conclusion may be reached as a matter of law that negligence has not been established, judgment may be entered as a matter of law."). I simply do not know at this stage in the development of the instant case whether this is such a case.

In addition, I wish to express my view that, although I certainly do not know what will transpire on remand in this case, I would be in favor of the consideration

by the trial justice of the doctrine of judgmental immunity[2] if, as the facts are

developed, that doctrine should become potentially applicable in the context of what

---

[2]      One of the many judicial definitions of the judgmental immunity doctrine is the following succinct sentence authored by then-Associate Justice Linda Stewart Dalianis of the Supreme Court of New Hampshire, writing for a unanimous court, in the case of *McIntire v. Lee*, 816 A.2d 993 (N.H. 2003):

> "The judgmental immunity doctrine provides * * * that an attorney will generally be immune from liability, as a matter of law, for acts or omissions during the conduct of litigation, which are the result of an honest exercise of professional judgment." *McIntire*, 816 A.2d at 1000.

Additionally, I would point the interested reader to the more expansive explanation of the doctrine in the opinion authored by then-Chief Justice Linda Copple Trout of the Supreme Court of Idaho, writing for a unanimous court, in the case of *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 981 P.2d 236 (Idaho 1999):

> "The courts have * * * held as a matter of law that an attorney cannot be held liable for failing to correctly anticipate the ultimate resolution of an unsettled legal principle. * * * Other courts have stated that, in the context of litigation, an attorney will not be held liable for a mere error in judgment or trial tactics if the attorney acted in good faith and upon an informed judgment. * * * The 'non-liability' rule in both situations, however, is conditioned upon the attorney acting in good faith and upon an informed judgment after undertaking reasonable research of the relevant legal principles and facts of the given case." *Sun Valley Potatoes, Inc.*, 981 P.2d at 239-40; *see Halvorsen v. Ferguson*, 735 P.2d 675, 681 (Wash. Ct. App. 1986) ("In general, mere errors in judgment or in trial tactics do not subject an attorney to liability for legal malpractice. * * * This rule has found virtually universal acceptance when the error involves an uncertain, unsettled, or debatable proposition of law.").

occurred in this trying case.  *See, e.g.*, *Woodruff v. Tomlin*, 616 F.2d 924, 930 (6th Cir. 1980); *Crosby v. Jones*, 705 So.2d 1356, 1358-59 (Fla. 1998); *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 981 P.2d 236, 239-40 (Idaho 1999); *McIntire v. Lee*, 816 A.2d 993, 1000-01 (N.H. 2003).  Depending on what transpires upon remand, this is the sort of case to which the doctrine of judgmental immunity could apply.  Importantly, there is precedent from other jurisdictions indicating that the application of the judgmental immunity principle can, in some instances, be the basis for the grant of summary judgment to the defendant in a legal malpractice action.  *See, e.g.*, *Crosby*, 705 So.2d at 1358-59; *Sun Valley Potatoes, Inc.*, 981 P.2d at 239-40.

I conclude by expressing my view that there is nothing easy or self-evident about this case.  In its own way, this case is similar to what Winston Churchill characterized as "a riddle wrapped in a mystery inside an enigma[.]"[3]  How that riddle will eventually be deciphered, I do not pretend to know at this moment.  My sincere hope is that, in the end, justice will be done.

---

It is noteworthy that the opinion in *Sun Valley Potatoes, Inc.* expressly indicates that, as of the time of its issuance (some twenty-two years ago), "[a]t least thirteen jurisdictions addressing the issue [had] adopted the rule in some form." *Sun Valley Potatoes, Inc.*, 981 P.2d at 239 n.1.

[3]  Winston Churchill, *The Russian Enigma* (BBC Broadcast Oct. 1, 1939), available at http://www.churchill-society-london.org.uk/RusnEnig.html (last visited June 15, 2021).

STATE OF RHODE ISLAND

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Sergio A. DeCurtis v. Visconti, Boren & Campbell Ltd. et al. |
| **Case Number** | No. 2019-245-Appeal.<br>(PC 12-4078) |
| **Date Opinion Filed** | June 16, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Stephen J. Brouillard, Esq.<br>Theresa L. Sousa, Esq. |
| | For Defendants:<br><br>Michael B. Forte, Jr., Esq.<br>Joseph F. Penza, Jr., Esq. |